UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LARRY LATIMORE,<br><br>               Petitioner,<br><br>     vs.<br><br>RONALD BARNES[1], Warden, California State Prison, California Men's Colony, High Desert State Prison,<br><br>               Respondent. | Case No:  C 11-5527 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Through counsel, Larry Latimore ("Petitioner"), a California state prisoner, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 to challenge his state felony conviction for robbery, aggravated kidnapping and other charges.  Having read and considered the papers submitted, and being fully informed, the Court DENIES the petition.

I. **BACKGROUND**

A. STATEMENT OF THE CASE

On February 27, 2007, the Alameda County District Attorney charged Petitioner in an information with kidnapping to commit robbery (i.e., aggravated kidnapping), Cal. Pen. Code § 209(b)(1); second degree robbery, id. § 211; and assault with a semi-automatic firearm, id. § 245(b).  The information also alleged firearm enhancements, id.

---

[1] The Court grants Petitioner's request to substitute Ronald Barnes, the current warden at High Desert State Prison, in place of Clark Ducart, as respondent.  See Fed. R. Civ. P. 25(d); Rule 2, Rules Governing Section 2254 Cases.

§ 12022.5(a)(1), in connection with all three counts, and firearm enhancements, id. § 12022.53(b) & (c), as to counts 1 and 2.

Petitioner's case was tried before a jury in the Alameda County Superior Court.  On December 11, 2008, the jury found Petitioner guilty on all three counts, and found true all enhancements, except the § 12022.53(c) enhancement as to count 1.  On February 9, 2009, the trial court sentenced petitioner to life plus ten years in state prison.

On April 29, 2010, the California Court of Appeal affirmed the judgment in a reasoned, unpublished opinion.  Ex. 6.  On August 18, 2010, the California Supreme Court denied Petitioner's petition for review.  Ex. 8.

Upon exhausting his state court appeals, Petitioner filed the instant action seeking federal habeas review of the underlying judgment.

**B.    FACTUAL SUMMARY**

The factual background is taken verbatim from the state appellate court's decision on direct appeal.  See People v. Latimore, No. A124063, 2010 WL 1719299 (Apr. 29. 2010).

> On the morning of November 25, 2006, Edward Harris took his pickup truck to the 1-Stop Auto Service (smog shop) for a smog check.  Norak Van, an employee at the smog shop, told Harris how long he (Harris) would have to wait, and Harris filled out some paperwork.  At some point people came into the smog shop selling gift items. Harris purchased some "Raiders-type" gloves and two "Looney Tune balloon gift sets" for $10 or $15.  Harris put the gloves in his pocket and the balloon sets in his truck. He then walked outside to the sidewalk area and read an advertisement while waiting for his truck to be finished.
>
> Harris then walked to the end of the street and around to the back of a closed building where he urinated.  As he started walking back toward the sidewalk, he noticed two men walking toward the BART (Bay Area Rapid Transit) station. Harris identified one of the men as appellant. The two men "suddenly B-lined across to the direction [Harris] was going." Appellant's confederate, the taller of the two men, asked Harris for a cigarette; Harris gave him one. The taller man took the cigarette and appeared to walk toward the BART station.  Appellant then approached Harris and asked for a cigarette.  After Harris gave appellant a cigarette, appellant mumbled something and Harris said, "What?" Appellant stared at Harris and said, "Give me all your shit now. I'm not kiddin.'" Harris responded, "You've got to be kidding me." At that point

appellant pulled out a gun, pointed it at Harris, said, "You think I'm kidding?" or "You think I'm joking?" and fired the gun at the ground.  Harris said the gun looked like a .22 target pistol.  Harris immediately threw everything in his pockets onto the ground, including his keys, the gloves and money.

Harris then looked around to see if anyone noticed the gun had been fired.  When he looked back he saw appellant standing up from a kneeling position in the area where Harris had dropped the gloves, money and keys.  The gloves were still on the ground, but the money was not.  Appellant then told Harris that Harris "had to have more stuff than that," and directed him to walk back behind the building.  Because Harris did not want to be shot he, instead, tried to walk toward "Alvarado Niles."  Appellant told Harris he was going to "pop" Harris, which Harris understood to mean shoot him.  Appellant's confederate stayed away from Harris and appellant, appearing to act as a lookout.

Appellant insisted that Harris must have "more money or credit cards or something."  Harris said the only thing he had was at his truck.  Appellant told Harris they were going to go to Harris's truck and Harris was going to take appellant to an ATM (automated teller machine) or "go buy things."  At that point, appellant's confederate was closer, about 15 or 20 feet away.  Appellant directed Harris to walk the 200 yards toward the smog shop; Harris complied out of fear of being shot.  Harris wanted to get to where there were other people, not necessarily to the smog shop.  At that point he did not voluntarily go to the smog shop.  Appellant walked five feet behind Harris with the gun trained on him.  Appellant's confederate walked in the same direction, a little farther away.  The confederate did not appear to be armed and appellant seemed to be "in charge."

Harris, appellant and appellant's confederate entered the smog shop and went to Harris's truck.  Harris told Van not to remove his truck from the shop.  Harris leaned into the truck, grabbed the "Looney Tunes thing" and gave it to appellant.  Van heard Harris say to appellant, "This is all I got."  Van told the three men they could not be in the repair area, so Harris and appellant walked into the smog shop's waiting room.  Appellant's confederate stayed out in front of the smog shop. Van told Harris his truck would be finished in a few minutes.  Harris told the technician not to close the hood on his truck and leave it where it was.  Harris was afraid that if the truck got outside, appellant and his confederate would get into the truck and Harris "wouldn't have any choice."

Harris walked over to his truck, reached in and turned on the motor, jumped into the truck and put it in gear.  He asked appellant if he was going to get in, wanting appellant to walk around to the other side of the truck while Harris drove out of the smog shop.  Appellant turned and called for his confederate; Harris "gunned it" and drove out of the smog shop.  When Harris looked back, he saw appellant and his confederate running toward Harris, so Harris turned right onto Alvarado.  Harris called 911 and described appellant and his confederate.  Harris agreed to meet police at the

smog shop since he had not paid his bill.  Meanwhile, after Harris sped out of the smog shop without paying, Van drove around for 10 or 15 minutes unsuccessfully trying to find Harris and then called 911.

Union City Police Officers Mace and Graetz responded to an armed robbery dispatch. They spotted two people matching the description of the suspects near the Skylark Drive apartments.  As the officers approached, the suspects turned their backs.  Mace noticed a large bulge in the pocket of one of the suspects. Mace got out of his patrol car and that suspect took off running; Mace unsuccessfully gave chase.  Graetz detained and handcuffed the other suspect, identified at trial as appellant.  Appellant was unarmed, but a .22-caliber bullet was found on him at the time of his arrest.  Appellant was brought to an "in-field lineup" where Harris identified him as "the guy that shot at me." Appellant was later transported to the police station by Officer Gannam.

Subsequently, a resident of the Skylard Drive apartments reported finding a handgun in a carport.  Mace and Graetz recovered the gun, which had six bullets in the magazine and one in the chamber.  Graetz described the gun as a .22-caliber semiautomatic.  The letter "C" was embossed at the bottom of each shell removed from the gun.  The recovered shells matched the bullet found on appellant.  No shell casing was recovered from the robbery scene.  A cell phone recovered from appellant contained a video which depicted appellant holding a gun like that recovered from the carport.

Latimore, 2010 WL 171929, *1-*3.

## II.   **STANDARD OF REVIEW**

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless:  (1) the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

The first prong of § 2254 applies both to questions of law and to mixed questions of law and fact.  See Williams (Terry) v. Taylor, 529 U.S. 362, 407-409 (2000).  A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that

1  contradicts the governing law set forth in [Supreme Court] cases or if the state court

2  confronts a set of facts that are materially indistinguishable from a decision of [the

3  Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer

4  v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).  "When there is no

5  clearly established federal law on an issue, a state court cannot be said to have

6  unreasonably applied the law as to that issue."  Holley v. Yarborough, 568 F.3d 1091, 1098

7  (9th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70, 76-77 (2006)).

8      Relief under the "unreasonable application" clause is appropriate "if the state court

9  identifies the correct governing legal principle from [the Supreme] Court's decisions but

10  unreasonably applies that principle to the facts of the prisoner's case."  Id.  The federal

11  court on habeas review may not issue the writ "simply because that court concludes in its

12  independent judgment that the relevant state-court decision applied clearly established

13  federal law erroneously or incorrectly."  Williams (Terry), 529 U.S. at 411.  Rather, the

14  petitioner must show that the application of Supreme Court law was "objectively

15  unreasonable."  Id. at 409; Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

16      The second prong of § 2254 applies to decisions based on factual determinations.

17  See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Under 28 U.S.C. § 2254(d)(2), a state

18  court decision "based on a factual determination will not be overturned on factual grounds

19  unless objectively unreasonable in light of the evidence presented in the state-court

20  proceeding."  Miller-El, 537 U.S. at 340; see also Torres v. Prunty, 223 F.3d 1103, 1107

21  (9th Cir. 2000).

22      In determining whether a state court's decision is contrary to, or involves an

23  unreasonable application of, clearly established federal law, courts in this Circuit look to

24  the decision of the highest state court to address the merits of the petitioner's claim in a

25  reasoned decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v.

26  Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Moreover, "a determination of a factual

27  issue made by a State court shall be presumed to be correct," and the petitioner "shall have

28

- 5 -

1  the burden of rebutting the presumption of correctness by clear and convincing evidence."

2  28 U.S.C. § 2254(e)(1).

3      On federal habeas review, AEDPA "imposes a highly deferential standard for

4  evaluating state-court rulings" and "demands that state-court decisions be given the benefit

5  of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).

6  In applying the above standards on habeas review, this Court reviews the "last reasoned

7  decision" by the state court. See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

8  The last reasoned decision in this case is the California Court of Appeal's unpublished

9  disposition issued on April 29, 2010. Latimore, 2010 WL 171929.

10  **III.   DISCUSSION**

11      The Petition alleges two claims of instructional error based on alleged deficiencies in

12  CALCRIM No. 1203 and CALCRIM No. 220. Petitioner contends that these instructions

13  allowed the jury to convict him on the aggravated kidnapping charge without a showing of

14  guilt beyond a reasonable doubt. Petitioner also claims that there was insufficient evidence

15  to support a conviction for aggravated kidnapping. The Court discusses these claims in

16  turn.

17      **A.   INSTRUCTIONAL ERROR**

18      To obtain federal habeas relief based on instructional error, the petitioner must

19  demonstrate "that an erroneous instruction so infected the entire trial that the resulting

20  conviction violates due process." Gilmore v. Taylor, 508 U.S. 333, 342-43 (1993). The

21  court must evaluate jury instructions in the context of the overall charge to the jury as a

22  component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169

23  (1982). If instructional error is shown, the court must then determine whether there was

24  prejudice; that is, whether the error had substantial and injurious effect or influence in

25  determining the jury's verdict within the meaning of Brecht v. Abrahamson, 507 U.S. 619,

26  637 (1993). See Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010) (citing Fry v.

27  Pliler, 551 U.S. 112 (2007)).

28

On federal habeas review, federal courts are bound to presume that state courts know and follow the law, and to give state-court decisions "the benefit of the doubt."  <u>See Musladin v. Lamarque</u>, 555 F.3d 830, 838 n.6 (9th Cir. 2009) (citation and internal quotation marks omitted).  The deference afforded to state court decisions "applies with even greater force when a state court is analyzing a jury instruction developed under state law," as in the case here.  <u>Byrd v. Lewis</u>, 566 F.3d 855, 861-862 (9th Cir. 2009).

### 1.   CALCRIM No. 1203

The crime of kidnapping to commit robbery is established only "if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended [robbery]."  Cal. Pen. Code § 209(b)(1)-(2).  "As to whether the movement increased a victim's risk of harm, the jury considers such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes.  The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased."  <u>People v. Simmons</u>, 233 Cal.App.4th 1458, 1471 (2015) (internal quotations and citations omitted).

The court instructed the jury on the elements of kidnapping for purpose of robbery by giving CALCRIM No. 1203, which "is a correct statement" of the elements of kidnapping for robbery.  <u>People v. Curry</u>, 158 Cal.App.4th 766, 781 (2007).  The trial court's instruction read as follows:

> The defendant is charged in Count 1 with kidnapping for the purpose of robbery in violation of ... section 209(b).
>
> To prove that the defendant is guilty of this crime, the People must prove that:
>
> > 1.  The defendant intended to commit robbery;
> >
> > 2.  Acting with that intent, the defendant took, held, or detained another person by using force or by instilling a reasonable fear;
> >
> > 3.  <u>Using that force or fear, the defendant moved the other person or made the other person move a substantial distance;</u>

4.  The other person was moved or made to move a distance beyond that merely incidental to the commission of a robbery;

5.  When that movement began, the defendant already intended to commit robbery;

6.  The other person did not consent to the movement;

AND

7.  The defendant did not actually and reasonably believe that the other person consented to the movement.

As used here, substantial distance means more than a slight or trivial distance. <u>The movement must have substantially increased the risk of physical or psychological harm to the person beyond that necessarily present in the robbery</u>.  In deciding whether the movement was sufficient, consider all the circumstances relating to the movement.

In order to consent, a person must act freely and voluntarily and know the nature of the act.

To be guilty of kidnapping for the purpose of robbery, the defendant does not actually have to commit the robbery.

To decide whether the defendant intended to commit robbery, please refer to the separate instructions that I will give you on that crime.

The defendant is not guilty of kidnapping if he reasonably and actually believed that the other person consented to the movement. The People have the burden of proving beyond a reasonable doubt that the defendant did not reasonably and actually believe that the other person consented to the movement. If the People have not met this burden, you must find the defendant not guilty of this crime.

The defendant is not guilty of kidnapping if the other person consented to go with the defendant. The other person consented if he (1) freely and voluntarily agreed to go with or be moved by the defendant, (2) was aware of the movement, and (3) had sufficient mental capacity to choose to go with the defendant. The People have the burden of proving beyond a reasonable doubt that the other person did not consent to go with the defendant. If the People have not met this burden, you must find the defendant not guilty of this crime.

CT 205-206 (emphasis added).

On appeal, Petitioner alleged that the foregoing instruction was erroneous, ostensibly because it failed to make clear that "risk of harm" is an element of the offense that must be

proven beyond a reasonable doubt.  The state appellate court rejected this claim, finding

that the jury would have understood from the instructions as a whole that the prosecution

had to prove the risk of harm element beyond a reasonable doubt.  The state court of appeal

explained as follows:

> Appellant contends the CALCRIM No. 1203 instruction erroneously fails to describe the "risk of harm term" as an essential element which the People must prove beyond a reasonable doubt. Instead, he asserts that the risk of harm element is described "as a factor to be considered among all the circumstances relating to the sufficiency of the movement." Appellant further asserts that the CALCRIM No. 1203 instruction omits the essential risk of harm element from its "proof list" and instead, "relegates it to a separate paragraph lacking the key phrase" "the People must prove. . . ."  He argues that by presenting increased risk of harm merely as one of "the circumstance[s] relating to the movement," the jury was permitted to convict him of aggravated kidnapping without finding that the People proved the increased risk of harm element beyond a reasonable doubt. Appellant further argues that the instructional error was not cured with any of the instructions given, including CALCRIM No. 220, or by any explanation by the prosecution during argument.

> A person is guilty of simple kidnapping if he or she "forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county ...." (§ 207, subd. (a).)

> The Legislature has specified greater punishment for aggravated kidnapping, where the accused "kidnaps or carries away any individual to commit robbery ...." (§ 209, subd. (b)(1)); <u>People v. Curry</u> (2007) 158 Cal.App.4th 766, 779, 70 Cal.Rptr.3d 257 (<u>Curry</u>).) Section 209, subdivision (b) provides, in relevant part: "(1) Any person who kidnaps or carries away any individual to commit robbery ... shall be punished by imprisonment in the state prison for life with the possibility of parole. [¶] (2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in the intended underlying offense."

> "[F]or aggravated kidnapping, the victim must be forced to move a substantial distance, the movement cannot be merely incidental to the target crime, and the movement must substantially increase the risk of harm to the victim." (<u>People v. Dominguez</u> (2006) 39 Cal.4th 1141, 1153, 47 Cal.Rptr.3d 575, 140 P.3d 866 (<u>Dominguez</u>).) "The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement. [Citation.]" (<u>Id.</u> at p. 1152, 47 Cal.Rptr.3d 575, 140 P.3d 866.)  In assessing the increased risk of harm, a jury should consider "whether the movement decreases the likelihood of

detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." (<u>Ibid</u>.)

The CALCRIM No. 1203 instruction informed the jury that appellant could not be convicted of kidnapping for the purpose of robbery unless the People proved that Harris was moved or made to move a substantial distance.  <u>The instruction defined "substantial distance" as movement that "must have substantially increased the risk of physical or psychological harm to the person beyond that necessarily present in the robbery."  The instruction then directed the jury to consider "all the circumstances relating to the movement" in deciding whether the movement was sufficient. Since the instruction specified that the People were required to prove the movement was a "substantial distance," the jury necessarily understood that the portion of the instruction defining substantial distance was also subject to proof by the People</u>. Moreover, the CALCRIM No. 220 instruction on reasonable doubt instructed the jury that "[w]henever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt."  <u>Because the jury was instructed that proof by the People had to be proof beyond a reasonable doubt, it necessarily understood the CALCRIM No. 1203 instruction as requiring proof beyond a reasonable doubt of the "substantial distance" of the movement, i.e. movement that "must have substantially increased the risk of physical or psychological harm to the person." No instructional error is shown</u>.

<u>Latimore</u>, 2010 WL 1719299, at *4-5 (emphasis added).

The Court finds that Petitioner has failed to demonstrate that the state appellate court's decision upholding the trial court's use of CALCRIM No. 1203 was objectively unreasonable.  Pursuant to CALCRIM No. 1203, the jury was expressly instructed that in order to find Petitioner guilty of aggravated kidnapping, it had to find: (1) that Petitioner used force or fear to move another person a "substantial distance"; (2) that the distance was beyond that incidental to the robbery; and, (3) that the "movement <u>must</u> have substantially increased the risk of physical or psychological harm to the person beyond that necessarily present in the robbery."  CT 205-206 (emphasis added).  Thus, it is readily apparent that risk of harm was expressed as an essential element of aggravated kidnapping, and not merely a "factor" to be considered, as Petitioner has alleged.

Moreover, CALCRIM No. 1203 must be construed with CALCRIM No. 220, which instructed jurors that whenever other instructions informed them that the prosecution "must prove something," the prosecution bears the burden of proving it beyond a reasonable

1    doubt.  See Middleton v. McNeil, 541 U.S. 433, 437 (2004) ("'[A] single instruction to a

2    jury may not be judged in artificial isolation, but must be viewed in the context of the

3    overall charge.'") (citation omitted, brackets in original).  As the state court found, when

4    read in conjunction with CALCRIM No. 1203—which informed the jury that the

5    prosecution had to prove a risk of harm to the victim in order to prove aggravated

6    kidnapping—the jury would have understood that the prosecution's burden of proving such

7    risk of harm was beyond a reasonable doubt.  Giving appropriate deference to the state

8    appellate court's decision, the Court concludes that Petitioner has failed to show that there

9    was a reasonable likelihood that the jury applied the instruction in a way that relieved the

10   state of its burden of proving each element of the offense beyond a reasonable doubt.  See

11   Boyde v. California, 494 U.S. 370, 380-81 (1990); see also Middleton, 541 U.S. at 437-38.

## 2.       CALCRIM No. 220

13           Much like his claim regarding CALCRIM No. 1203, Petitioner argues that the use of

14   CALCRIM No. 220 was improper because the instruction allowed the jury to convict him

15   by applying a lesser standard of proof as to the risk of harm element.  The trial court

16   instructed as follows:

17           The fact that a criminal charge has been filed against the
             defendant is not evidence that the charge is true.  You must not
18           be biased against the defendant just because he has been
             arrested, charged with a crime, or brought to trial.
19
20           A defendant in a criminal case is presumed to be innocent.  This
             presumption requires that the People prove a defendant guilty
21           beyond a reasonable doubt. Whenever I tell you the People
             must prove something, I mean they must prove it beyond a
             reasonable doubt.
22
23           Proof beyond a reasonable doubt is proof that leaves you with
             an abiding conviction that the charge is true.  The evidence
24           need not eliminate all possible doubt because everything in life
             is open to some possible or imaginary doubt.

25           In deciding whether the People have proved their case beyond a
             reasonable doubt, you must impartially compare and consider
26           all the evidence that was received throughout the entire trial.
             Unless the evidence proves the defendant guilty beyond a
27           reasonable doubt, he is entitled to an acquittal and you must
             find him not guilty.

28

1    CT 184 (emphasis added).

2          On appeal, the state court of appeal rejected Petitioner's contention CALCRIM No.

3    203 reduced the prosecution's burden of proof:

4                Next, appellant contends the CALCRIM No. 220
             instruction given by the trial court failed to inform the jury that
5            the People were required to prove him guilty of every element
             of the charged offenses beyond a reasonable doubt. In
6            particular, he argues that the instruction omits the "'every fact'
             component of the <u>Winship</u> standard" (<u>In re Winship</u> (1970) 397
7            U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (<u>Winship</u>)).

8                . . . .

9                Under the due process clause of the federal Constitution,
             the government "bears the burden of proving all elements of the
10           offense charged [citations], and must persuade the factfinder
             'beyond a reasonable doubt' of the facts necessary to establish
11           each of those elements [citations]." (<u>Sullivan v. Louisiana</u>
             (1993) 508 U.S. 275, 277-278, 113 S.Ct. 2078, 124 L.Ed.2d
12           182.) In reviewing the correctness of the reasonable doubt
             instructions given, the proper inquiry is "whether there is a
13           reasonable likelihood that the jury understood the instructions
             to allow conviction based on proof insufficient to meet the
14           Winship standard." (<u>Victor v. Nebraska</u> (1994) 511 U.S. 1, 6,
             114 S.Ct. 1239, 127 L.Ed.2d 583.) As we noted previously, we
15           must consider appellant's challenge to the CALCRIM No. 220
             instruction in light of the jury instructions as a whole.
16           (<u>Galloway</u>, <u>supra</u>, 100 Cal.App.3d at pp. 567-568, 160 Cal.Rptr.
             914.)

17

18               Appellant acknowledges that in <u>People v. Ramos</u> (2008)
             163 Cal.App.4th 1082, 1088-1089, 78 Cal.Rptr.3d 186
19           (Ramos), Division One of this court rejected the same argument
             appellant makes. In <u>Ramos</u>, the trial judge enumerated each of
20           the elements of the charged crime (second degree murder) and
             the special allegation, and stated that the People were obligated
21           to prove each of those elements in order for the defendant to be
             found guilty. Thus, it concluded that taken as a whole, the
22           instructions adequately informed the jury that the prosecution
             was required to prove each element of the charged crime
23           beyond a reasonable doubt. (<u>Id.</u> at p. 1089, 78 Cal.Rptr.3d 186.)

24               Appellant repeats his argument that the risk of harm
             element is not contained within the "proof list" in CALCRIM
25           No. 1203, and therefore argues that <u>Ramos</u> does not apply
             because taken together, CALCRIM No. 1203 and CALCRIM
26           No. 220 do not inform the jury that each element of the charged
             aggravated kidnapping must be proved beyond a reasonable
27           doubt. Again, we disagree.  The CALCRIM No. 220 instruction
             on reasonable doubt instructed the jury that "Whenever I tell
28           you the People must prove something, I mean they must prove
             it beyond a reasonable doubt." Taken together with CALCRIM

> No. 220, the jury necessarily understood the CALCRIM No.
> 1203 instruction as requiring proof beyond a reasonable doubt
> of the "substantial distance" of the movement, i.e., movement
> that "must have substantially increased the risk of physical or
> psychological harm to the person." No instructional error is
> shown.

Latimore, 2010 WL 1719299, at *5-6 (emphasis added).

The Court finds that the state court of appeal's rejection of Petitioner's claim of instructional error regarding CALCRIM No. 220 was not objectively unreasonable.  The instruction explicitly states that whenever "the People must prove something, . . . they <u>must</u> prove it beyond a reasonable doubt."  CT 184 (emphasis added).  As discussed above, CALCRIM No. 1203 informed jurors that an aggravated kidnapping conviction requires the jury to find the movement of the victim substantially increased the risk of harm to the victim.  Considered in tandem, these instructions accurately informed the jury that the prosecution "must" prove that Petitioner moved Harris in a manner that "substantially increased the risk of physical or psychological harm to the person beyond that necessarily present in the robbery."  CT 205.  The jury was also given CALCRIM No. 200, which instructed: "Pay careful attention to all of these instructions and consider them together."  CT 181.  The jury is presumed to have followed these instructions.  <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000) (citing <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987)).  Considering the challenged instructions in their entirety and in the context of other instructions setting forth the prosecution's burden of proof, the Court finds that there is no reasonable likelihood that the jury applied these instructions in such a way as to shift the burden of proof to the defense.  <u>See Middleton</u>, 541 U.S. at 437-38; <u>Boyde</u>, 494 U.S. at 380-81.

## B.    SUFFICIENCY OF THE EVIDENCE

Petitioner contends there was insufficient evidence of an increased risk of harm to the victim to support a conviction for aggravated kidnapping.  "Insufficient evidence claims are reviewed by looking at the elements of the offense under state law."  <u>Emery v. Clark</u>, 643 F.3d 1210, 1214 (9th Cir. 2011) (per curiam).  "[T]he relevant question" in a

sufficiency of the evidence claim "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

Habeas claims predicated upon the alleged insufficiency of evidence "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, – U.S. ––––, ––, 132 S.Ct. 2060, 2062 (2012) (per curiam).  First, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." <u>Id.</u>  Second, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable." <u>Id.</u> (citations omitted).

The state appellate court rejected Petitioner's challenge to the sufficiency of the evidence, finding as follows:

> Finally, appellant contends there was insufficient evidence of asportation to support his kidnapping for robbery conviction.  He asserts that he moved Harris "on foot from a deserted place with no observers into the [smog] shop, where everything he did and said was under the direct observation of two witnesses."  He argues that any risk of harm was not caused by the movement.  He concludes there was no evidence that his movement of Harris increased Harris's risk of harm, and, instead, the evidence showed that the movement decreased Harris's risk of harm.
>
> "When a defendant challenges the sufficiency of the evidence, the reviewing court 'must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.  [Citation.]' [Citation.] Indeed, we

""'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" [Citation.]' [Citation.]" (<u>Curry</u>, <u>supra</u>, 158 Cal.App.4th at p. 778, 70 Cal.Rptr.3d 257.)

After appellant robbed Harris at gunpoint of the contents of Harris's pockets, he insisted that Harris must have "more stuff than that." When Harris responded that what he had was in his truck, appellant moved Harris at gunpoint the 200 yards from the robbery scene to the smog shop with the intent of forcing Harris to drive appellant to an ATM or "go buy things." At the smog shop, appellant robbed Harris of additional items. <u>Thus, appellant's movement of Harris was not merely incidental to the first robbery; it was intended to facilitate a further robbery</u>.

<u>In addition, the movement increased the risk of harm to Harris</u>.  Whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in robbery "includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes."  (<u>People v. Rayford</u> (1994) 9 Cal.4th 1, 13-14, 36 Cal.Rptr.2d 317, 884 P.2d 1369 (<u>Rayford</u>), and cases cited therein; see also <u>Dominguez</u>, <u>supra</u>, 39 Cal.4th at p. 1152, 47 Cal.Rptr.3d 575, 140 P.3d 866.)  Appellant's movement of Harris at gunpoint from the scene of the first robbery to the smog shop may not have "decreased [the] likelihood of detection." However, <u>it certainly increased the dangers inherent in an escape attempt. As Harris's actual escape demonstrates, there was a risk that appellant might fire his weapon to abort the escape or some third party could be injured as Harris drove rapidly out of the shop.</u> "The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased. [Citations.]" (<u>Rayford</u>, at p. 14, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)  The evidence was sufficient to permit a reasonable jury to find the requisite asportation element of kidnapping for robbery.

<u>Latimore</u>, 2010 WL 1719299, at *6-7.

The Court finds that Petitioner has failed to demonstrate that he is entitled to habeas relief under the standard articulated in <u>Coleman</u>.  There is ample evidence to support the jury's conclusion that Petitioner's movement of Harris increased the risk of harm.  After initially robbing Harris on the grassy knoll of his gloves, money and keys, Petitioner insisted that Harris must have other property.  Harris responded that the only other property he had was in his truck.  Petitioner then forced Harris to walk 200 yards from the grassy knoll to the smog shop in order to commit additional crimes; to wit, to force Harris "to take

1   him to an ATM machine or go buy things."  Thus, Petitioner's movement of Harris

2   presented an increased danger that Harris would be further victimized.  See Simmons, 233

3   Cal.App.4th at 1471 (noting that actual harm need not materialize in order to show an

4   increased risk of harm).

5        The movement to Harris's truck in the smog shop also presented an increased danger

6   inherent in Harris's foreseeable attempt to escape.  Petitioner was armed with a loaded gun,

7   which he had already fired once in order to instill fear in and obtain compliance from

8   Harris.  With Petitioner in close proximity to him, Harris entered his truck and sped out of

9   the smog shop, understandably fearing Petitioner would shoot him—as Petitioner had

10  previously threatened.  Though Harris escaped unharmed, there was an increased risk that

11  Harris may have been injured.  As noted by the state appellate court, Harris, still fearing

12  that he could be shot by Petitioner, easily could have crashed the car or prompted Petitioner

13  to fire his gun a second time in his attempt to escape.

14       There also was an increased risk of psychological harm to Harris.[2]  Prior to forcing

15  Petitioner to move from the grass knoll to the garage, Petitioner had already fired his gun as

16  a warning to Harris and had threatened to shoot him.  In addition, Petitioner revealed that

17  his intention upon reaching the smog shop was to force Harris to drive to the ATM.  In

18  view of Petitioner's conduct and threats, Harris undoubtedly feared that he would be robbed

19  again at the ATM and later killed.  As such, a reasonable jury could conclude that

20  Petitioner's act of moving Harris involved an increased risk of psychological harm to

21  Harris.

22       Viewing the evidence in the light most favorable to the prosecution, and resolving

23  any conflicting inferences in the prosecution's favor, the Court finds that a rational trier of

24  fact could have found the essential elements of the crimes beyond a reasonable doubt,

25  including that the movement of Harris increased the risk of harm to him.  See Payne, 982

26  _____

27       [2] The prosecution argued: "[Y]ou saw what that did to Mr. Harris on the stand when
    he was telling you about what happened to him and how he was moved and what he was
28  feeling, what he was thinking when he was moved. It increased psychological harm to
    him."  RT 605.

F.2d at 338.  Petitioner's claim thus fails to satisfy the first part of the Coleman test.

Moreover, Petitioner has otherwise failed to demonstrate the second prong of the Coleman

test; namely, that the state appellate court's decision was objectively unreasonable.  See

Coleman, 132 S.Ct. at 2062; Emery, 643 F.3d at 1213-14.

## IV.    CONCLUSION

The Court finds no merit to any of Petitioner's claims.  No certificate of

appealability is warranted in this case.  For the reasons set forth above, no jurist of reason

would find this Court's denial of Petitioner's claims "debatable or wrong."  See Slack v.

McDaniel, 529 U.S. 473, 484 (2000).   Accordingly,

IT IS HEREBY ORDERED THAT:

1.    Petitioner's request to substitute Ronald Barnes as Respondent is GRANTED.

2.    The Petition for Writ of Habeas Corpus is DENIED as to all claims, and a

certificate of appealability will not issue.

3.    The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated:  3/27/15

SAUNDRA BROWN ARMSTRONG
United States District Judge